1

2

3

4

5               UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF WASHINGTON

7 | GINA DANIELSON, MARTA
KEAGLE and MICHAEL MAXEY, et
8 | al.,

9                Plaintiffs,

10      v.

11 | YAKIMA COUNTY, LINDA DIXON,
in her official capacity as Director of
12 | Human Resources, and YAKIMA
COUNTY DEPARTMENT OF
13 | CORRECTIONS,

14              Defendants.

NO:  10-CV-3115-TOR

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

15

16      BEFORE THE COURT is Defendants' Motion for Summary Judgment

17 (ECF No. 41).  This matter was submitted for consideration without oral argument.

18 The Court has reviewed the briefing and the record and files herein, and is fully

19 informed.

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

This is an employment discrimination case.  Plaintiffs Gina Danielson, Marta Keagle and Michael Maxey have filed gender discrimination and retaliation claims arising from their unsuccessful attempts to fill a vacancy for Administrative Division Chief of the Yakima County Department of Corrections in 2008. Defendants have moved for summary judgment on all claims.  For the reasons discussed below, the Court will grant the motion.

FACTS

Plaintiffs Gina Danielson, Marta Keagle and Michael Maxey were, at all times relevant to this lawsuit, employed as Sergeants by Defendant Yakima County Department of Corrections ("YCDOC").  Plaintiff Danielson began her career with the YCDOC as a Corrections Officer in 1994 and was promoted to the rank of Sergeant in 2006.  Plaintiff Keagle was hired as a Corrections Officer in 1984 and was promoted to Sergeant in 2004.  Plaintiff Maxey worked as a Corrections Officer from 1994 to 1998, and again from 2000 to 2002, before achieving the rank of Sergeant in 2007.

On September 4, 2008, the YCDOC posted a job vacancy for the position of Administrative Division Chief.  This position was an upper-level management position, reporting only to the Deputy Director and Director of the department.  As relevant here, the official vacancy announcement specified that applicants were

required to have the following training and experience:

> **Experience & Training:** Bachelor's Degree in a related field plus Five (5) years of progressively responsible experience in a corrections services setting of which two (2) years must be within a supervisory and managerial capacity <u>OR</u> an equivalent combination of education and experience which provide knowledge, skills and abilities sufficient to successfully perform the essential duties of the job.

ECF No. 43 at 26.

Plaintiffs Danielson, Keagle and Maxey applied for the position shortly after it was posted.  Five other candidates also submitted applications: Sergeant Karen Kelly, Sergeant Scott Himes, Sergeant Gordon Costello, Sergeant Peter Van Kuelen, and Yakima County Sheriff's Deputy Richard Mottice.  Upon receiving these applications, Defendant Yakima County's Human Resources Recruiting Specialist, Judy Brown, performed a "factoring process" to evaluate the applicants' respective qualifications.  During this process, Ms. Brown determined that Plaintiffs Danielson, Keagle, and Maxey, as well as Mr. Van Kuelen, did not satisfy the posting's minimum experience and training requirements because they lacked management experience and/or education.

Ms. Brown's determination was subsequently reviewed by Defendant Yakima County's Human Resources Director, Defendant Linda Dixon, who concurred that these four applicants did not meet the required qualifications. Specifically, Defendant Dixon concluded that these applicants lacked two years' experience in a "supervisory and managerial capacity" and did not have an

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

equivalent combination of education and experience.  In her view, while these applicants had developed significant *supervisory* experience at the rank of Sergeant, they had not been in a position to gain *management* experience.  In other words, Defendant Dixon concluded that YCDOC Sergeants, while clearly supervisors, were not advanced enough in the chain of command to be considered managers.  As a result, any Sergeant applying for the position would need to demonstrate outside management-related experience or education in order to qualify for the position.

The end result of Defendant Dixon's decision was that three female applicants (the three Plaintiffs) and one male applicant (Mr. Van Kuelen) were disqualified from the application process.  Three male applicants (Messrs. Himes, Costello and Mottice) and one female applicant (Ms. Kelly) were allowed to proceed.  Many members of the senior command staff, including Director Stephen Robertson, were disappointed with Defendant Dixon's decision and believed that the disqualified applicants were sufficiently qualified by virtue of their experience as Sergeants.  Nevertheless, the selection process proceeded with only the four applicants deemed qualified by Defendant Dixon.  The position was ultimately awarded to Mr. Himes.

On July 7, 2009, Plaintiffs filed formal charges of discrimination with the Equal Employment Opportunity Commission, alleging that they had been

1   discriminated against in the application process on the basis of their gender.  The

2   EEOC subsequently issued right-to-sue letters on August 31, 2010.  This lawsuit

3   followed.

4                                            DISCUSSION

5          Summary judgment may be granted under Rule 56(a) upon a showing by the

6   moving party "that there is no genuine dispute as to any material fact and that the

7   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

8   moving party bears the initial burden of demonstrating the absence of any genuine

9   issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

10  burden then shifts to the non-moving party to identify specific genuine issues of

11  material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby,*

12  *Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in

13  support of the plaintiff's position will be insufficient; there must be evidence on

14  which the jury could reasonably find for the plaintiff."  *Id.* at 252.

15         For purposes of summary judgment, a fact is "material" if it might affect the

16  outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any

17  such fact is "genuine" only where the evidence is such that a reasonable jury could

18  find in favor of the non-moving party.  *Id.*  In ruling on a summary judgment

19  motion, a court must construe the facts, as well as all rational inferences therefrom,

20  in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372,

378 (2007).  Finally, the court may only consider evidence that would be

admissible at trial.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir.

2002).

## A. Section 1983 Claims

Defendants argue that Plaintiffs have effectively abandoned their § 1983

claims.  The Court agrees.  In their opening memorandum, Defendants argued that

they did not act pursuant to an official policy or custom, and that, as a result, they

are not liable for the alleged constitutional violations pursuant to *Monell v. Dep't*

*of Soc. Servs.*, 436 U.S. 658 (1978).  Plaintiffs did not respond to this argument in

their responsive briefing.  Having independently reviewed the record, the Court

finds very little evidence to support a finding of municipal liability under *Monell*.

Accordingly, Plaintiff's § 1983 claims are dismissed with prejudice.

## B. Gender Discrimination Claims

Plaintiffs have asserted gender discrimination claims under Title VII and the

WLAD.  Both sets of claims are subject to the familiar *McDonnell Douglas* burden

shifting analysis.  *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123 (9th

Cir. 2009) (Title VII disparate treatment claim); *Kuest v. Regent Assisted Living,*

*Inc.*, 111 Wash. App. 36, 44 (2002) (WLAD disparate treatment claim).  Under

*McDonnell Douglas*, a plaintiff alleging disparate treatment must first establish a

prima facie case of discrimination.  The burden of production then shifts to the

1    employer to articulate a legitimate, non-discriminatory reason for taking the

2    challenged action.  Provided that the employer is able to articulate such a reason,

3    the burden then shifts back to the plaintiff to demonstrate that the proffered reason

4    was a mere pretext for discrimination.  *See generally Cornwell v. Electra Cent.*

5    *Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

6        1.  Prima Facie Case

7        To state a prima facie case for gender discrimination in violation of Title

8    VII, Plaintiffs must establish that (1) they belonged to a protected class; (2) they

9    were qualified for the job which they sought; (3) they were subjected to an adverse

10   employment action; and (4) similarly situated employees not in their protected

11   class received more favorable treatment.  *Nicholson*, 580 F.3d at 1123.  The

12   applicable standard under the WLAD is similar; Plaintiffs must demonstrate that

13   (1) they were members of a protected class; (2) they were qualified for the position

14   which they sought; (3) they suffered an adverse employment action; and (4) a

15   person outside of their protected class was selected over them.  *Kuest*, 111 Wash.

16   App. at 44 (citing *Marquis v. City of Spokane*, 130 Wash.2d 97, 113-14 (1996)).

17   Defendants concede that Plaintiffs are members of a protected class (female

18   employees) and that they suffered an adverse employment action (disqualification

19   from the application process).  ECF No. 41 at 9; ECF No. 54 at 5.  Thus, the only

20   disputed issues are (1) whether Plaintiffs were qualified to fill the position of

Administrative Division Chief; and (2) whether similarly situated male employees received more favorable treatment.

### a. *Were Plaintiffs Qualified to Fill the Position?*

Defendants argue that Plaintiffs were not qualified to fill the position of Administrative Division Chief because they lacked the requisite two years of "supervisory and managerial" experience in a corrections setting.[1]  Consistent with the determination made by Defendant Dixon during the "factoring process," Defendants contend that Plaintiffs' prior work experience as Sergeants cannot satisfy the "managerial" experience requirement.  Because Sergeants are low-level supervisors who do not participate in making strategic decisions on behalf of the Department, Defendants argue, experience as a Sergeant cannot be considered "managerial" experience.  Thus, Defendants maintain that any Sergeant seeking to be promoted to Administrative Division Chief would be required to demonstrate prior managerial experience outside the YCDOC setting.

---

[1] The applicable portion of the official job posting reads as follows:

> **Experience & Training:** Bachelor's Degree in a related field plus Five (5) years of progressively responsible experience in a corrections services setting of which two (2) years must be within a supervisory and managerial capacity <u>OR</u> an equivalent combination of education and experience which provide knowledge, skills and abilities sufficient to successfully perform the essential duties of the job.

ECF No. 43 at 26.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

Plaintiffs vehemently disagree with the premise that Sergeants lack "managerial" experience. In their view, Sergeants perform a significant amount of "managerial" work and are therefore qualified for the position of Administrative Division Chief. In support of this assertion, Plaintiffs have submitted testimony from Director Robertson and former Chief Michael Williams to the effect that Plaintiffs were qualified for the position by virtue of their experience as Sergeants. *See* Robertson Dep., ECF No. 47-4, at 32:2-20, 36:2-23, 41:8-18; Williams Decl., ECF No. 49, at ¶¶ 11, 13-17. Plaintiffs have also furnished expert witness testimony on this same point. *See* Blair Decl., ECF No. 48, at ¶¶ 8-16.

Plaintiffs' argument with respect to managerial experience misses the mark. As Defendants correctly note, this case is not about whether Defendant Dixon was correct in determining that Sergeants who lack outside managerial experience are *per se* unqualified for the position. Rather, this case is about whether Defendants intended to preclude female applicants from qualifying for the position. Given that Defendant Dixon's determination excluded both male and female applicants— while also allowing both male and female applicants to move forward—there is little to suggest that Defendants acted with a discriminatory purpose. Nevertheless, the Court will give Plaintiffs the benefit of the doubt and assume, for purposes of analyzing the second element of their prima facie cases only, that Plaintiffs were "qualified" for the position Administrative Division Chief.

b. _Did Similarly Situated Male Employees Receive More_
_Favorable Treatment?_

Defendants contend that Plaintiffs cannot establish the fourth element of a

prima facie gender discrimination claim: that similarly situated male applicants

were treated more favorably.  At the outset, the Court must decide whether any of

the male applicants were "similarly situated" to the Plaintiffs.  For purposes of a

disparate treatment discrimination claim, employees are similarly situated where

they "have similar jobs and display similar conduct."  *Nicholson*, 580 F.3d at 1125

(citation omitted).  "The employees need not be identical; they must simply be

similar in all *material* respects."  *Id.* (emphasis in original) (quotation and citation

omitted).  To be considered similarly situated in the context of a failure-to-hire or

failure-to-promote case, the plaintiff "need[s] to show that she was considered a

viable candidate for the position."  *Jackson v. United Parcel Serv.*, Inc., 643 F.3d

1081, 1086 (8th Cir. 2011).

The Court finds that the three male applicants who were deemed qualified—

Scott Himes, Gordon Costello and Richard Mottice—were not similarly situated to

the Plaintiffs.  Although Mr. Himes and Mr. Costello were both Sergeants at the

time they applied for the position, neither qualified on the basis of his experience

as a Sergeant.  Rather, both qualified on the basis of having obtained management

experience or management-oriented education outside the YCDOC: Himes as a

loss control manager at K-Mart, and Costello as the general manager of a mobile

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

phone company and a service manager of a communications company.  Mr.

Mottice was not similarly situated to Plaintiffs because he was employed by a

different entity (the Yakima County Sheriff's Office) and also held a Masters of

Education in Educational Leadership degree.  Dixon Decl., ECF No. 43, at ¶¶ 18-

20.

Plaintiffs assert that Defendant Dixon erred in deeming these qualifications

"equivalent" to two years' experience in a "supervisory and managerial capacity"

in a corrections services setting.  As noted above, however, the wisdom of

Defendant Dixon's decisions during the factoring process is not at issue.  It is

undisputed that Messrs. Himes, Costello and Mottice met the "supervisory and

managerial" experience requirement based upon prior management experience or

education rather than their experience as Sergeants.  Because the Plaintiffs lack

similar management-related credentials, they are not similarly situated applicants.

It also bears noting that the sole male applicant with whom Plaintiffs *are*

similarly situated—Peter Van Keulen—received the exact same treatment.  Like

Plaintiffs, Mr. Van Keulen was a Sergeant with no outside management experience

or education at the time he applied for the position.  Like Plaintiffs, Mr. Keulen

was "factored out" of the application process for failure to satisfy the "supervisory

and managerial" experience requirement—despite the fact that he had served as a

Sergeant for far longer than any of the Plaintiffs.

1   Finally, Plaintiffs have largely ignored the fact that another member of their

2   protected class, a female Sergeant named Karen Kelly, was deemed qualified for

3   the position on the basis of her outside work experience and education.  While not

4   fatal to their claims, this fact severely undermines Plaintiffs' assertions that

5   Defendants drafted and/or applied the "supervisory and managerial" experience

6   requirement with discriminatory intent.  Because a similarly-situated male

7   applicant received the same treatment as the Plaintiffs—and because a female

8   Sergeant with outside management experience was deemed qualified—the Court

9   finds that Plaintiffs have failed to establish a prima facie case of gender

10  discrimination under Title VII and the WLAD.  Defendants are entitled to

11  summary judgment on these claims.

12        2.  Legitimate, Non-Discriminatory Reason

13  Although not necessary to the disposition of these claims, the Court also

14  finds that Defendants have articulated a legitimate, non-discriminatory reason for

15  the challenged action.  As discussed above, Defendant Dixon determined that

16  Plaintiffs did not meet the "supervisory and managerial" experience requirement

17  because they lacked relevant work experience or education beyond their tenure as

18  Sergeants with the YCDOC.  Although Plaintiffs contend that this decision was

19  entirely lacking in "foundation," they concede that this was, in fact, the basis for

20  their disqualification from the application process.  ECF No. 46 at ¶ 13.  This is a

facially legitimate, non-discriminatory reason for disqualifying Plaintiffs (as well as one of their male colleagues), from the application process.

### 3. Pretext

Finally, assuming for the sake of argument that Plaintiffs could establish a prima facie case, they have failed to demonstrate that the disqualification of Sergeants who lacked outside management experience was a pretext for gender discrimination. In responding to an employer's proffered legitimate, non-discriminatory reason, a plaintiff can prove pretext "either (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002) (internal quotations and citation omitted). When the plaintiff relies upon circumstantial evidence to establish pretext, that evidence "must be specific and substantial in order to survive summary judgment." *Id.* (quotation and citation omitted).

Plaintiffs have advanced three arguments in support of their position that the challenged action was a mere pretext for gender discrimination. First, Plaintiffs note that Defendant Dixon's application of the "supervisory and managerial" experience requirement during the factoring process eliminated 75% of the female applicants while allowing 75% of the male applicants to move forward. ECF No.

45 at 17.  In support of this observation, Plaintiffs cite to *Busby v. City of Orlando*, 931 F.2d 764, 782 (11th Cir. 1991) for the proposition that "[d]iscriminatory animus can be shown through statistics."  ECF No. 45 at 17.

The Court agrees with the general proposition that statistical evidence can be used to establish discriminatory intent in disparate treatment cases.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1997) ("[O]ur cases make it unmistakably clear that statistical analyses have served and will continue to serve an important role in cases in which the existence of discrimination is a disputed issue.") (quotation and citation omitted).  When a plaintiff alleges that his or her employer "has engaged in a 'pattern or practice' of discrimination, statistical data is relevant because it can be used to establish a general discriminatory pattern in the employer's hiring or promotion practices."  *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) (internal quotation and citation omitted).  "Such a discriminatory pattern is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue."  *Id.* (citations omitted).

However, the use of statistics to establish discriminatory intent is subject to one important caveat: the data must be based upon a sufficiently large sample size. *Morita v. S. Cal. Permanente Med. Grp.*, 541 F.2d 217, 219-20 (9th Cir. 1976). Because "statistical evidence derived from an extremely small universe . . . has

little predictive value," it cannot give rise to an inference of discrimination.  *Id.*
(quotation and citation omitted); *see also Shutt v. Sandoz Crop Prot. Corp.*, 944
F.2d 1431, 1433 (9th Cir. 1991) (statistical evidence does not give rise to an
inference of discrimination if the data are "small or incomplete").  Unfortunately
for Plaintiffs, a sample size "of only eight persons . . . is much too small to have
any significant benefit to [their] position."  *Morita*, 541 F.2d at 220.

Second, and in a related vein, Plaintiffs argue that discriminatory intent can
be inferred "from the absence of any female supervisors in the history of
[Plaintiffs'] workplace."  ECF No. 45 at 17.  Plaintiffs' reference to the absence of
female "supervisors" is puzzling.  It is undisputed that Sergeants (like the
Plaintiffs) were considered supervisors and therefore satisfied the "supervisory"
portion of the "supervisory and managerial" experience requirement.  Thus, the
Court will assume (as have the Defendants), that Plaintiffs intended to reference
the absence of female *managers* in the workplace.

This argument also fails due to an inadequate sample size.  According to
Defendant Dixon, there were only five (5) openings for Chief positions from 1995
to 2008.  Dixon Decl., ECF No. 56 at ¶ 4.  This sample size is too small to give rise
to an inference of discriminatory intent.  *Morita*, 541 F.2d at 220.  Moreover, as
Defendants note, one of those five positions was filled by a female employee.
Dixon Decl., ECF No. 56 at ¶ 4.  Given that females are represented at a rate of

approximately twenty percent in the YCDOC's officer corps, *see* Pls.' Statement of Material Fact No. 21, ECF No. 46 at 24, the fact that one out of the five Chief positions was awarded to a female would seem to preclude any inference of discrimination.

Finally, Plaintiffs submit that pretext can be established from sexist statements allegedly made by "the ultimate decision makers" on the senior command staff. ECF No. 45 at 18. In support of this assertion, Plaintiffs have offered (1) a declaration of former Chief Williams stating that he overheard Director Robertson and Deputy Director Kelly Rosenow "make lewd comments directed toward women . . . such as women doing 'Skirt Work' [and] wearing a 'Naughty Nurse' outfit," *see* Williams Decl., ECF No. 49 at ¶ 38; and (2) the testimony of Plaintiff Keagle, who avers that Director Robertson "was a male chauvinist" and "made numerous statements about being a male chauvinist" throughout her career in the department, *see* Keagle Dep., ECF No. 47-1, at Tr. 61.

These statements are insufficient to establish pretext. As noted above, it was Defendant Dixon—rather than Director Robertson or Deputy Director Rosenow— who determined that Plaintiffs did not meet the "supervisory and managerial" experience requirement. Notably, Director Robertson *vehemently disagreed* with this determination and attempted to have it reversed. *See* Robertson Dep., ECF No. 47-4, at Tr. 18:4-19:15, 31:14-32:20. Director Robertson even went so far as

to appeal the determination to the Yakima County Board of Commissioners in an attempt to allow Plaintiffs to move forward in the selection process.  Robertson Dep., ECF No. 47-4, at Tr. 34:25-35:7, 35:24-37:4.

Ultimately, Robertson was advised that he would either have to proceed with the four candidates deemed qualified by Defendant Dixon or "stop the process and start it all over again" with a revised statement of required qualifications. Robertson Dep., ECF No. 47-4, at Tr. 36:21-22.  Not wanting to "disenfranchise" the four applicants who had already been deemed qualified under the existing language, Director Robertson "fell on his sword," accepted responsibility for the problems caused by the "supervisory and managerial" language, and personally apologized to the Plaintiffs.  Robertson Dep., ECF No. 47-4, at Tr. 36:24-38:5, 41:16-43:10.  These are hardly consistent with the actions of a male "chauvinist."

In any event, assuming arguendo that Director Robertson and Deputy Director Rosenow *did* make the sexist statements attributed to them, there is nothing to suggest that their views toward women played a role in Defendant Dixon's decision to eliminate Plaintiffs from consideration.  In the final analysis, there is simply no evidence from which a rational jury could find that Defendants used the "supervisory and managerial" experience requirement as a pretext to eliminate female applicants from the selection process.  Accordingly, Defendants are entitled to summary judgment on this alternative basis as well.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

**C. Retaliation Claims**

Plaintiffs have asserted retaliation claims under Title VII and the WLAD arising from their filing of formal gender discrimination charges with the Equal Employment Opportunity Commission ("EEOC") after being eliminated from consideration for the Administrative Division Chief position.  Defendants have moved for summary judgment on these claims on two alternative grounds: (1) that Plaintiffs failed to exhaust their administrative remedies as to these claims prior to filing the instant lawsuit; and (2) that Plaintiffs did not suffer adverse employment action as a result of their filing charges with the EEOC.  The Court will address each of these arguments in turn.

1.  <u>Failure to Exhaust</u>

Plaintiffs did not fail to exhaust their administrative remedies as to their retaliation claims.  As Plaintiffs correctly note, "[s]ubject matter jurisdiction [in a Title VII case] extends over all allegations of discrimination that [fall] within the scope . . . of an EEOC investigation which can reasonably be expected to grow out of the [initial] charge of discrimination." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) (emphasis omitted).  The allegations of retaliation in this case satisfy that requirement.  Moreover, the WLAD does not require a plaintiff to file a formal charge of discrimination prior to asserting a retaliation claim. *See Reese v. Sears, Roebuck & Co.*, 107 Wash.2d 563, 578 (1987) (holding that chapter 49.60

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

RCW permits individual employees to pursue their rights under the WLAD in court without first exhausting remedies in a collective bargaining agreement), *overruled on other grounds by*, *Phillips v. City of Seattle*, 111 Wash.2d 903 (1989). Accordingly, the Court has subject matter jurisdiction over these claims.

   2.  Merits

   Plaintiff's Complaint contains only two bare-bones allegations relevant to their retaliation claims: "Plaintiffs allege that Defendant . . . [subjected them] to discrimination when it removed them from a list of applicants for promotion on the basis of their gender . . . and subsequently retaliated against them after they filed a complaint with the Equal Opportunity Commission," Pls.' Compl., ECF No. 1 at ¶ 4.6; and "After the filing of charges with the EEOC, each Plaintiff has been the subject of discrimination by the Yakima County Department of Corrections as a result of such filing," Pls.' Compl., ECF No. 1 at ¶ 4.16.  In opposing the instant motion, Plaintiffs have made no effort to respond to Defendants' arguments on the merits of their retaliation claims.  Accordingly, the Court will deem these claims abandoned.  *See* L.R. 56(d) ("In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are [expressly] controverted.").

1    Even if these claims had not been abandoned, however, Defendants would

2    still be entitled to summary judgment.  As Defendant correctly notes, there is

3    absolutely no evidence that Plaintiff Keagle or Plaintiff Maxey suffered adverse

4    employment action after they filed their formal discrimination charges with the

5    EEOC.  Plaintiff Maxey concedes that she has not applied for any promotions

6    since applying for the Administrative Division Chief in 2008, that she has never

7    been demoted or had her level of benefits reduced in any fashion, and that she has

8    not received any significant discipline.  ECF No. 46 at 18.  Plaintiff Keagle admits

9    that she was promoted to the rank of Lieutenant in 2010.  ECF No. 46 at 18.  There

10   is simply no evidence to support a finding that these Plaintiffs were subjected to

11   *any* adverse employment action, let alone adverse employment action stemming

12   from their filing of formal discrimination charges.

13   Plaintiff Danielson, on the other hand, clearly suffered adverse employment

14   action when she was terminated in 2010.  Like the other two Plaintiffs, however,

15   she has failed to establish that her termination was causally related to the filing of

16   her EEOC discrimination charge.  It is undisputed that Plaintiff Danielson was

17   placed on paid administrative leave in November 2009 after Director Campbell[2]

18   _____

19   [2] Ed Campbell succeeded Stephen Robertson as Director of the YCDOC on

20   October 1, 2009.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 20

1    discovered that she was involved in a romantic relationship with a convicted felon

2    in violation of YCDOC policy.  ECF No. 46 at 15.  It is further undisputed that this

3    suspension occurred approximately four months after Plaintiff Danielson filed her

4    discrimination charge with the EEOC on July 7, 2009.

5          Contrary to Defendants' assertions, the four-month delay between the filing

6    of Plaintiff Danielson's EEOC charge and her suspension for associating with a

7    convicted felon is *arguably* short enough to give rise to an inference of retaliatory

8    intent.  *See Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (no

9    inference of retaliatory intent arising from nine-month delay between protected

10   activity and adverse employment action); *Villiarimo v.Aloha Island Air, Inc.*, 281

11   F.3d 1054, 1065 (9th Cir. 2002) (eighteen-month delay too long to give rise to

12   inference of retaliatory intent); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 506

13   (9th Cir. 1989) (delay of 42 and 59 days short enough to give rise to inference).

14   Thus, Plaintiff Danielson has stated a prima facie case of retaliation by producing

15   evidence that (1) she engaged in protected activity; (2) she suffered adverse

16   employment action; and (3) there was a causal relationship between the two.  *See*

17   *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35; *Hines v. Todd*

18   *Pac. Shipyards Corp.*, 127 Wash. App. 356, 374 (2005).

19         Because Plaintiff Danielson has satisfied her initial burden of establishing a

20   prima facie case of retaliation, the burden of production shifts to Defendants to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 21

1   articulate a legitimate, non-retaliatory reason for suspending (and ultimately

2   terminating) her employment.  Plaintiff Danielson's admitted sexual relationship

3   with C.W.[3] clearly satisfies this requirement.  It is undisputed that C.W. was both a

4   convicted felon and an active member of an outlaw motorcycle gang when he was

5   dating Plaintiff Danielson.  *See* ECF No. 46 at 15.  It is further undisputed that

6   Plaintiff Danielson, like all YCDOC employees, was expressly prohibited from

7   associating with convicted felons—and that she was well aware of this restriction.

8   *See* ECF No. 46 at 16-17.  Thus, the Court finds that Defendants have proffered a

9   legitimate, non-discriminatory reason for terminating Plaintiff Danielson's

10  employment.

11       The only remaining question is whether the Defendants' proffered reason

12  was a mere pretext for retaliation.  As noted above, Plaintiff has made absolutely

13  no attempt to address this requirement in her briefing.  Having reviewed the entire

14  record, the Court can find only one fact that could arguably support a finding of

15  pretext: that Plaintiff Danielson may have been disciplined more harshly than other

16  YCDOC employees who had previously associated with convicted felons.  *See*

17  Williams Decl., ECF No. 49, at ¶¶ 46-54.

18

19  [3] The Court will refer to Plaintiff Danielson's boyfriend by his initials in order to

20  protect his privacy.

1       Based upon the rather cursory assertions in former Chief Williams'

2  declaration, however, it appears that harsher discipline was warranted under the

3  circumstances.  Notably, Plaintiff Danielson engaged in a romantic relationship

4  with a convicted felon *whom she knew to be an active member of the Bandidos*

5  *motorcycle gang*.  ECF No. 46 at 15-16.  During the course of this relationship,

6  Plaintiff Danielson allowed C.W. to reside in her home, thereby allowing him

7  access to multiple firearms.  ECF No. 46 at 16.  These facts distinguish Plaintiff

8  Danielson's misconduct from that allegedly committed by two other YCDOC

9  employees—both of whom merely associated with known offenders "on active

10  parole."  *See* Williamson Decl., ECF No. 49, at ¶¶ 49, 51.  In the final analysis, no

11  reasonable jury could find that Plaintiff Danielson's suspension and termination for

12  becoming romantically involved with a convicted felon in violation of YDOC

13  policy was a mere pretext for unlawful retaliation.  Accordingly, Defendants are

14  entitled to summary judgment on this claim.

15  **D. Punitive Damages**

16       Having dismissed all of Plaintiffs' claims, the Court need not address

17  Defendants' request for summary judgment on the issue of punitive damages.

18  ///

19  ///

20  ///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23

1    **IT IS HEREBY ORDERED:**

2        Defendants' Motion for Summary Judgment (ECF No. 41) is **GRANTED**.

3    All pending motions are **DENIED** as moot.  The final pretrial conference

4    scheduled for June 25, 2013 at 4:00 p.m., as well as the jury trial scheduled for

5    July 15, 2013, are **VACATED**.

6        The District Court Executive is hereby directed to enter this Order, provide

7    copies to counsel, enter **JUDGMENT** for Defendants, and **CLOSE** the file.

8        **DATED** June 12, 2013.

9    

10                           THOMAS O. RICE
                          United States District Judge

11

12

13

14

15

16

17

18

19

20